UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-143-RJC

| ROBBIE M. HARRIS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | **ORDER** |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 13), and Memorandum in Support, (Doc. No. 13-1); Defendant's Motion for Summary Judgment, (Doc. No. 14), and Memorandum in Support, (Doc. No. 15); Plaintiff's Reply to Response to Motion, (Doc. No. 16); Plaintiff's Supplemental Memorandum, (Doc. No. 19); and Defendant's Supplemental Memorandum, (Doc. No. 20). This matter is ripe for review.

**I.     BACKGROUND**

    A.     Procedural Background

Plaintiff Robbie Harris ("Plaintiff") seeks judicial review of the Commissioner's denial of his social security claim. (Doc. No. 1). Plaintiff applied for supplemental security income (SSI) payments on July 29, 2010. (Tr. 192-198). In his application, Plaintiff claimed that he became disabled on May 30, 2001, but he later amended his alleged onset date to July 29, 2010. (Tr. 192, 214). Plaintiff also filed an application for disability insurance benefits (DIB). (Tr. 199-205). However, when Plaintiff amended his alleged onset date to July 29, 2010, he abandoned his DIB claim because any disability would begin after June 30, 2001, the date he

1

was last insured for such benefits. (Tr. 208, 214). His applications were denied initially and upon reconsideration. (Tr. 102, 133). At Plaintiff's request an administrative law judge (ALJ) held a hearing on April 4, 2013, at which Plaintiff appeared with an attorney. (Tr. 29-75). Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert (VE). (Tr. 12). On June 7, 2013, the ALJ rendered a decision that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-23). The Appeals Council denied Plaintiff's request for review on January 24, 2014, rendering the ALJ's decision the Commissioner's final decision on the case. (Tr. 1-4). Plaintiff then filed this civil action, seeking judicial review of the Commissioner's final decision.

> B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 1614(a)(3)(A)(i) of the Social Security Act. (Tr. 13). After reviewing all the evidence, the ALJ concluded that Plaintiff "[had] not been under a disability within the meaning of the Social Security Act from July 29, 2010, through the date of this decision." (Id.).

To determine whether a claimant is disabled, the SSA established a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

2

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time after his alleged onset date of disability of July 29, 2010. (Tr. 14). At step two, the ALJ found that Plaintiff had the following severe impairments: joint pain/arthritis/multi-level degenerative disc disease; shoulder pain; bladder dysfunction/urinary urgency; status-post prostate cancer with residuals; hypertension; benign brain mass/neoplasm; left knee problem; headaches; hernia; history of poly-substance abuse; psychotic disorder; depressive disorder; cognitive disorder; and status-post remote closed head injury with subdural hematoma; and borderline intelligence. (Tr. 14-15).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-18). Next, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work with the following limitations: he is limited to occasional climbing ramps and stairs, but no climbing ladders, rope or scaffolds; occasional stooping, balancing, kneeling, crouching, and/or crawling; and must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; Plaintiff requires a sit/stand option at will; Plaintiff is capable of performing simple, routine, repetitive tasks, and maintaining concentration, persistence or pace to stay on task for two hour periods during a typical eight hour workday; and Plaintiff requires a low stress

3

work setting, which is defined as a work setting that is not production pace or quota based work, rather a goal oriented job primarily dealing with things as opposed to people, with no more than occasional changes in the work setting, nor more than occasional decision-making as a component of the job, and no direct work with the public as a component of the job, such as sales or negotiations, though incidental or casual contact with the public as it might arise during a work day is not precluded. (Tr. 18-21).

At step four, the ALJ found that Plaintiff had no past relevant work, thus transferability of job skills is not an issue. (Tr. 21). At step five, however, based on the VE's testimony given in response to a hypothetical question that incorporated Plaintiff's RFC, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy. (Tr. 21-22). Accordingly, the ALJ appropriately concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 22-23).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit

noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying his claims on four grounds: (1) the ALJ erred in making medical determinations beyond the scope of his authority; (2) the ALJ erred in failing to find that Plaintiff met Listing 12.05C; (3) the ALJ erred in failing to discuss the weight given to important medical evidence and the reasons for allocating weight to the evidence; and (4) the ALJ erred in failing to develop the record. The Court requested supplemental briefing regarding the Fourth Circuit's holdings in Mascio v. Colvin. 780 F.3d 632 (2015). In supplemental briefing, both parties agreed that Mascio does not require remand in this case.

Mascio v. Colvin requires remand whenever: (1) the ALJ fails to conduct a function-by-function analysis in assessing the claimant's RFC; (2) the ALJ fails to explain the reason for excluding any limitation for concentration, persistence, or pace in the hypothetical to the vocational expert; or (3) the ALJ determines the claimant's RFC before assessing her credibility. Id. The Court finds that Mascio is not implicated in this case.

    A.    <u>Whether the ALJ made medical determinations beyond the scope of his authority.</u>

At the administrative hearing, it is improper for the ALJ to reference and rely on his or her own observations in determining the claimant's mental and physical limitations. Copeland v. Bowen, No. 88-2972, 1989 WL 90545, at *3 (4th Cir. Aug. 7, 1989). However, this error is harmless if the ALJ also relied on independent, objective evidence in making his determinations. Id. Plaintiff asserts that the ALJ held himself out as being able to identify a psychotic person through observations at a hearing and that the ALJ gave too much weight to his own observations in determining Plaintiff's mental and physical limitations. Plaintiff argues that the ALJ's errors in this regard were so egregious and prominent in the decision that it cannot be said to be based on substantial evidence. (Doc. No. 16 at 3).

However, the ALJ discussed the results of the DDS Assessment (Exhibit 6A) as well as reports on the claimant's behavior when determining whether the claimant was psychotic. (Tr. 20-21). Both of these reports indicate that Plaintiff does not have a true psychotic disorder. It is clear that the ALJ relied on independent, objective evidence in making his determinations and not merely his observations as the Plaintiff contends. For this reasons, the Court finds that the ALJ's error was harmless.

    B.    <u>Whether ALJ erred in failing to find that Plaintiff met Listing 12.05C.</u>

Listing 12.05 requires a claimant to meet the capsule definition of mental retardation,

6

which means that the individual has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. Listing 12.05C is met when the claimant's condition meets the above definition and the claimant has a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other impairment imposing an additional and significant work-related limitation of function. Id. It is Plaintiff's burden to prove that his impairment met or medically equaled all of the criteria of the relevant listing. Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).

Plaintiff argues that the ALJ erred by finding that he did not meet the requirements of Listing 12.05C. (Doc. No. 13-1 at 13). First, Plaintiff asserts that the claimant meets the capsule definition of mental retardation. Plaintiff argues that teachers' comments, poor class performance, and Dr. Appollo's report demonstrate that claimant has "deficits in adaptive functioning initially manifested during the developmental period." (Doc. No. 13-1 at 14-16). Second, Plaintiff asserts that the claimant's Otis-Lennon test score of 68 is further proof of claimant's deficits in adaptive functioning. (Doc. No. 13-1 at 14, 16). Thus, Plaintiff argues that he met all the requirements of Listing 12.05C and should have been found disabled at Step 3.

Although Plaintiff has argued that claimant meets the capsule definition of mental retardation necessary for Listing 12.05C, Plaintiff has failed to address the additional requirement set forth in Listing 12.05C which, in part, requires "a valid verbal, performance, or full scale IQ of 60 through 70." Plaintiff's simple mention of the claimant's Otis-Lennon score is insufficient to satisfy the IQ requirement. First, an Otis-Lennon test is not a standardized test of intellectual functioning and does not assess an individual's IQ. The company that publishes the Otis-Lennon test lists a number of statistics the test might be used to measure, none of which are

7

IQ or even general intelligence. (Doc. No. 15 at 12). Second, the narrative accompanying Listing 12.00 makes no mention of the Otis-Lennon test, much less as a valid, acceptable IQ substitute. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(D)(6). Finally, and most importantly, Plaintiff fails to argue or allege that the Otis-Lennon score suffices as an IQ substitute. Instead, Plaintiff only argues that the Otis-Lennon score can be used "in establishing deficits in adaptive functioning." (Doc. No. 13-1 at 14). This argument only relates to the Otis-Lennon score's applicability to the capsule definition of mental retardation and not the IQ requirement set forth in Listing 12.05C. The Plaintiff did not provide a valid IQ score between 60 and 70, and thus, Plaintiff did not meet its burden in proving that claimant's impairment met or medically equaled all of the criteria of Listing 12.05C. For this reason, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's condition did not meet the requirements of Listing 12.05C.

    C.    <u>Whether the ALJ erred pursuant to SSR 86-8.</u>

SSR 86-8 states, "[t]he rationale [behind a disability determination or hearing] must . . . describe the weight attributed to the pertinent medical, nonmedical and vocational factors in the case; and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence." 1985 WL 56857 (Jan. 1, 1985).

Plaintiff asserts that the ALJ's statement the he "gives little limited weight to Dr. Apollo's findings," (Tr. 21), is vague and undefined. (Doc. No. 13-1 at 17). Plaintiff argues that because it is impossible to discern what the ALJ meant by "little limited weight," the ALJ did not make an intelligible allocation of weight or provide a rationale. Thus, Plaintiff contends that the

ALJ erred pursuant to SSR 86-8 and the decision should be vacated and remanded for a new hearing.

However, this Court disagrees with the Plaintiff and finds that the ALJ did not err pursuant to SSR 86-8. First, any ambiguity surrounding "little limited weight" dissipates when looking at the context of the statement. The statement following "little limited weight" makes clear that the ALJ gave Dr. Appollo's opinion little limited weight in comparison to Dr. Noles' opinion. (Tr. 21 (citing Tr. 126-129)). Thus, it is reasonable to infer that "little" means that Dr. Appollo's opinion will be given less weight than Dr. Noles' opinion and "limited" means that Dr. Appollo's opinion will only be considered to the extent it is consistent with Dr. Noles' opinion. Additionally, Plaintiff cites to no legal authority for its proposition that "little limited weight" is vague and undefined.

Moreover, in examining the record, one can infer the ALJ's reasons for giving Dr. Appollo's opinion "little limited weight." The ALJ discussed the reports from Dr. Appollo and Dr. Noles in detail. In assessing Dr. Appollo's report, the ALJ specifically noted that Dr. Appollo failed to account for Mr. Harris' substance abuse problems. (Tr. 16-17). The ALJ also found that the treatment notes in the record did not support the extreme restrictions Dr. Appollo stated. (Tr. 20). Although the ALJ did not explicitly state his reasons for giving Dr. Appollo's opinion its respective weight, it can be reasonably inferred that the aforementioned inconsistencies were the reasons that the ALJ allocated "little limited weight" to Dr. Appollo's opinion. For these reasons, the Court finds that the ALJ did not err under SSR 86-8.

D.  The ALJ erred by failing to develop the record.

"It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." A Helping Hand, LLC v. Baltimore County, Md., 515 F.3d 356, 369 (4th

9

Cir. 2008) (internal citation quotes omitted); see also SEC v. Pirate Investor LLC, 580 F.3d 233, 255 n. 23 (4th Cir. 2009) (stating that "[o]rdinarily we do not consider arguments raised for the first time in a reply brief"). In his reply brief, Plaintiff alleges that the ALJ erred by failing to develop the record because of the lack of a psychological consultative examination. Plaintiff asserts that because the ALJ failed to develop the record, the decision must be remanded. (Doc. No. 16 at 6).

However, in his original brief, the Plaintiff does not assert that the ALJ erred in failing to develop the record. Although Plaintiff raises this issue in his reply brief, the Plaintiff must first raise the issue in his original brief. Therefore, we decline to consider this argument. See A Helping Hand, LLC, 515 F.3d at 369.

## IV. CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 13) is **DENIED**, and
2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;
3. The Clerk of Court is directed to close this case.

Signed: August 18, 2015

Robert J. Conrad, Jr.
United States District Judge